## THE WELLINGTON.

### WOOD et al. v. THE WELLINGTON.

### LEWIS et al. v. SAME.

#### (District Court, N. D. California. March 17, 1893.)

#### Nos. 10,516, 10,523.

**1. SALVAGE—COMPENSATION—PRIOR AWARD.**
The power of an admiralty court to award salvage should be exercised with great care, and, where a large award has been made to the master of the salving vessel for a highly meritorious service, an additional award to the mate or other persons, for substantially the same service, should not be thereafter made; such persons having remained silent while the master was prosecuting his libel, although, if they had been parties to the former action, a different distribution might have been made.

**2. SAME—DISTRIBUTION—DELAY IN BRINGING SUIT.**
When no gross sum has been fixed as an award to the officers and men of a salving vessel, the respective rates of wages are not necessarily a just measure of the awards to be made to certain salvors, who fail to sue until others have recovered their compensation.

In Admiralty. Libels by I. W. Wood and others and John Lewis and Louis O. Eckles against the British steamer Wellington, etc., (Joan O. Dunsmuir, claimant,) for salvage. A statement of the facts of the case will be found in The Wellington, 52 Fed. Rep. 605. Decree for libelants.

H. W. Hutton and Walter G. Holmes, for libelants Wood and others.

Beverly L. Hodghead, for Lewis and Eckles.

Andros & Frank, for claimant.

MORROW, District Judge. A salvage service was rendered by the steamer San Pedro to the steamer Wellington November 3, 1891. The owner of the Wellington voluntarily paid to the owners of the San Pedro $10,000 for this service; but as no provision was made for the compensation of the officers and crew of the San Pedro for their services, either out of this sum or otherwise, William Robertson and nine of the crew filed a libel in this court July 13, 1892, against the steamer Wellington, claiming such compensation, and on August 1, 1892, Charles H. Hewitt, the master of the San Pedro, filed a separate libel against the salved vessel, claiming to have rendered services of a highly meritorious character in his capacity as master of the San Pedro. The two libels were consolidated and heard October 4, 5, and 6, 1892. The case was taken under advisement, and on October 20, 1892, a decree was entered in favor of Capt. Hewitt for $2,500, and in favor of the other libelants for $100 each. 52 Fed. Rep. 605. The officers and members of the San Pedro numbered 40 persons at the time of the salvage service. January 6, 1893, or 14 months after the service, and 2 months after the decree in favor of the first libelants, I. W. Wood, chief engineer, Therold Stein, second assistant engineer, Thomas Cleary, third assistant engineer, and seven seamen, joined in a libel, claiming sal-

vage compensation; and on January 23, 1893, John Lewis, the first mate, and Louis O. Eckles, second mate, filed their libel, claiming like compensation for their services on the occasion in question.

The amount of compensation to be awarded to these libelants is the question now submitted to the court; and it is urged, in favor of a liberal allowance to the two mates and the three engineers, that their services, like those of the master, were highly meritorious, and that their compensation should be on the same scale as the award made to the master. Indeed, it is claimed that the first mate was the real hero of the occasion, and that but for his conduct the Wellington might have been lost. The testimony in support of this claim is to the effect that after the steel hawser parted the master of the San Pedro shouted to the master of the Wellington that he would try him again the next morning; that the first mate of the San Pedro interposed, and suggested that the effort should be made at once; whereupon the 14-inch manilla hawser was brought up from the hold of the San Pedro, and after some skillful work was made fast to the Wellington.

In the former case the court took into consideration the fact that the owner of the Wellington had voluntarily paid to the owners of the San Pedro the sum of $10,000 for the towage service of that vessel, and in viewing that transaction the court was of the opinion that the amount so paid was in accordance with the principles recognized by the courts in making salvage awards. The San Pedro was a powerful vessel, properly equipped for a towage service. The Norwegian steamer Marie had attempted to tow the Wellington the day before, and failed. The difficulty with her was a lack of proper equipment. She did not have a hawser of sufficient strength to stand the towage strain. If I remember correctly, five towlines parted before she gave up the effort, and abandoned the Wellington to her fate. It appeared to be a fortunate circumstance that the San Pedro was equipped with a new 14-inch manilla hawser. The rescue of the Wellington was undoubtedly largely due to that fact; and, had the court been called upon to make an award for the service rendered by the San Pedro, it would have had in view, not only the actual service rendered, but the encouragement that a liberal allowance would give to owners to so equip their vessels that they might be always ready to render a towage service under such circumstances. But, in considering the claim of the master of the San Pedro for a salvage compensation, his skill and courage as an officer were recognized as important factors in the service. There is no heroism in the power or operation of a steam engine, or in the strength of a ship's hawser. These agencies must be operated and directed by human intelligence to be effective. This intelligence was posssseu by Capt. Hewitt, to an eminent degree, and it appeared from the evidence that he was sufficiently brave and skillful to be master of the situation. It is said now, in disparagement of his service, that he is 70 years of age; but how does that fact, if it be a fact, discredit his superior ability, as an officer, to direct the movements of his vessel on this occasion? His long experience would rather commend the soundness of his judgment in such an emer-

gency, and I am inclined to think that his familiarity with dangerous situations enabled him to secure the disabled steamer in the gale that was then prevailing. The testimony is conflicting as to what occurred immediately after the parting of the steel cable, but I see no sufficient reason in the evidence now before the court to depart from my former opinion as to the value of Capt. Hewitt's services; but, if I did, it is now beyond the power of the court to revise that judgment. Perhaps, if the libelants in the present case had been parties to the former action, a different distribution of the award might have been made; but they stood by, and allowed the master to prove his superior services, without objection, and without making a claim for themselves. The court was therefore justified in assuming that his claim was not questioned by any of the other officers or crew, but was admitted to be true. The power of the admiralty court to award for a salvage service is an exceptional power, to be exercised with great care, and in view of all the circumstances of the case. It would, therefore, manifestly be an abuse of that power to award to one claimant a large compensation for some supposed meritorious salvage service, and then, upon a subsequent libel being filed by another claimant, to make an additional award to him for the same, or substantially the same, service. In every case the court should carefully look into all the details, and, considering the relation each claimant bears to the service, fix the whole amount for which the salved vessel is to be made liable. I do not mean to say that a subsequent libelant might not show good cause for delay in asserting a particularly meritorious claim, but the testimony now before the court does not present such a case. It is said that the mates have been absent from the jurisdiction, but this is not a sufficient excuse for their silence for more than a year. They could have presented their claims without coming personally into court. In fact, the mate has pursued that course in presenting his present claim, and had his testimony taken by deposition.

It is urged, further, that the libelants should be awarded a sum in proportion to the wages they were receiving on board the San Pedro. It is true that courts sometimes resort to the rate of wages paid to the officers and the crew of the salving vessel for the purpose of determining a fair and equitable proportion of the award for each claimant, but this is not an established rule for every case. In the case of A Lot of Whalebone, 51 Fed. Rep. 916, this court made distribution of the salvage award to the officers and crew of the salving vessel in accordance with the terms of the agreement between the officers and men and the owners of the vessel as to the individual share each should have in the proceeds of the voyage. The nature of the services performed in that case was a reason for adopting this method of distribution. In the case of The Sirius, 53 Fed. Rep. 611, the court affirmed a contract for a salvage service, and afterwards the libelant and interveners in the case asked the court to make a distribution of this amount among the claimants. Here again the court considered the circumstances of the case, and awarded a portion of the sum to the officers and crew of the vessel according to their relations to the service performed, their extra work, and

their regular wages. In both of these cases all the claimants were in court, a gross sum had been fixed for the whole salvage service, and the circumstances favored the method for making distribution among the several claimants. In the case at bar the effort is to induce the court to proceed the reverse way, and, having determined that the master was entitled to a certain liberal compensation, it is urged that the mates and engineers should be compensated on the same liberal scale, and in proportion to their wages; but the circumstances of the present case do not justify such an award, and, besides, this method of procedure, once established, would inevitably lead to claims for salvage services being presented in succession by individuals, the most meritorious first, so as to secure the largest possible scale of compensation, by which others, to follow, might be determined. This would clearly be unjust, not only in the encouragement it would give for a multiplicity of suits, but in the promotion of false and exaggerated claims.

In the former case I awarded $100 to each member of the crew who had presented his claim, and I am informed that the owner of the Wellington has settled with fourteen others of the crew on that basis. I will accordingly direct that a decree be entered in favor of the present libelants for the sum of $100 each.